UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|     Plaintiff-Respondent, | ) ) ) |
| v. | ) ) Case No. 4:18-cr-40029-SLD-JEH |
| AJAYI MARCEL MCINTYRE, | ) ) ) |
|     Defendant-Petitioner. | ) ) |

ORDER

Before the Court are Defendant-Petitioner Ajayi Marcel McIntyre's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("2255 Motion"), ECF No. 73, and Plaintiff-Respondent United States of America's ("the Government") Motion to Dismiss Petitioner's Motion to Vacate, Set Aside, or Correct the Sentence ("Motion to Dismiss"), ECF No. 74. For the reasons that follow, the Motion to Dismiss is GRANTED, and the 2255 Motion is DISMISSED as untimely.[1]

BACKGROUND

On June 20, 2018, a grand jury indicted McIntyre on one count of heroin distribution resulting in death in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (count one) and two counts of heroin distribution in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (counts two and three). Indictment 1–2, ECF No. 1. On September 16, 2020, he entered a plea of guilty to count three and a lesser included offense of count one (distribution of heroin) pursuant to a written plea agreement. Sept. 16, 2020 Min. Entry; Plea Agreement ¶ 4, ECF No. 52. The plea was accepted

---

[1] The Court issued an order ruling on these motions in April 2023. *See* Apr. 24, 2023 Order, ECF No. 75. McIntyre moved for reconsideration of the order. Mot. Reconsideration, ECF No. 78. He represented that he did not receive the Government's motion to dismiss. *Id.* at. 1. The Court granted the motion for reconsideration, ordered the Clerk to send a copy of the motion to dismiss to McIntyre, and set a new deadline for McIntyre to file a response. June 13, 2023 Text Order. The Court received no response by that deadline, so it is re-entering its order.

on October 2, 2020.  Acceptance, ECF No. 57.  On April 13, 2021, the Court sentenced McIntyre to 216 months of imprisonment and three years of supervised release.  Apr. 13, 2021 Min. Entry.  Judgment was entered on April 15, 2021.  Judgment 1, ECF No. 67.  McIntyre did not appeal.

The Court docketed a motion under 28 U.S.C. § 2255 from McIntyre on October 21, 2022, which the Government sought to have sealed.  *See* Sealed Mot., ECF No. 71; Mot. Seal, ECF No. 72; Nov. 2, 2022 Text Order (granting the motion to seal).  The motion was refiled as the 2255 Motion on November 2, 2022, with some of the exhibits filed under seal.  In the 2255 Motion, McIntyre argues that he is actually innocent of death resulting from his heroin distribution because there is insufficient evidence to meet the causation standard identified in *Burrage v. United States*, 571 U.S. 204 (2014).  2255 Mot. 4.[2]  He also argues that his counsel was ineffective for failing to raise this issue.  *Id.* at 5.  The Government moves to dismiss McIntyre's motion as untimely.  Mot. Dismiss 1.

## DISCUSSION

### I.     Legal Standard

A prisoner in federal custody may move the court that imposed his sentence to vacate, set aside, or correct it.  28 U.S.C. § 2255(a).  "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process."  *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).  Accordingly, such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral

---

[2] The Court uses the page numbers generated by CM/ECF because the 2255 Motion is inconsistently paginated.

attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

    II.      Analysis

Pursuant to the Antiterrorism and Effective Death Penalty Act, a federal prisoner seeking to vacate his sentence under § 2255 has one year to do so, from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Judgment was entered on McIntyre's conviction on April 15, 2021. *See* Judgment 1. His conviction became final when his time to appeal passed on April 29, 2021. *See Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005) ("[A]n unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires."); Fed. R. App. P. 4(b)(1)(A)(i) (providing that a criminal defendant has fourteen days from the entry of judgment to appeal); *cf. Clay v. United States*, 537 U.S. 522, 532 (2003) (holding that a conviction becomes final when the time for seeking direct review expires). Under § 2255(f)(1), then, McIntyre had until April 29, 2022 to file a § 2255 motion.

Because McIntyre is a self-represented prisoner, the prisoner mailbox rule applies. *See Edwards v. United States*, 266 F.3d 756, 758 (7th Cir. 2001). Under this rule, a motion or other

paper is "considered 'filed' at the moment of delivery to the prison authorities." *Id.* The Rules Governing § 2255 Proceedings have incorporated the mailbox rule: Rule 3(d) provides that "[a] paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing." "Timely filing may be shown by a declaration [made under penalty of perjury] or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid." *Id.*

McIntyre did not declare under penalty of perjury when he placed his motion in the prison mailing system or provide a notarized statement of his date of deposit. *See* 2255 Mot. 12. (Indeed, he did not even date his motion or address the timeliness of his motion. *See id.* at 11–12. And he did not respond to the Government's Motion to Dismiss.). Thus, he is not entitled to the protection of the mailbox rule, and his motion is deemed filed when it was received by the Court on October 21, 2022.[3] This was beyond the one-year statute of limitations provided by § 2255(f)(1).

McIntyre does not contend any other provision of § 2255(f) applies, and the Court finds that none do. McIntyre does not contend that governmental action created an impediment to his filing a § 2255 motion, so § 2255(f)(2) does not apply. He does not rely on a right "newly

---

[3] The other available evidence before the Court does not clearly indicate when the motion was delivered to prison authorities for mailing. The front of the envelope bears a postmark dated October 19, 2022. Envelope 1, ECF No. 73-3. But the back of the envelope has a stamp from AUSP Thomson indicating it was received in "CSD" on October 19, 2020. *Id.* at 2. According to the Handbook for AUSP Thomson, CSD is the Correctional Systems Department which "consists of the Mail Room, Receiving and Discharge and the Records Office." Admission & Orientation Handbook 42, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/tom/TOM-Camp_AO_Handbook042417.pdf (Feb. 2017). But McIntyre was not sentenced to Bureau of Prisons custody until April 2021, so he could not have delivered his motion to prison officials in October 2020. Presumably, the stamp was wrong. In any case, if McIntyre contended that his motion was timely delivered to prison officials but not received by the court until October 2022, it was his burden to supply "a sworn declaration attesting to [the circumstances of the original filing] *plus* some other corroborating evidence," such as copies of the filing, the postmarked envelope, other correspondence, or testimonial evidence. *See Ray v. Clements*, 700 F.3d 993, 1011–12 (7th Cir. 2012) (discussing this rule in the context of petitions for state postconviction relief); *United States v. Buchanan*, Cause No. 1:18-CR-21-HAB, 2022 WL 1320416, at *1 (N.D. Ind. May 3, 2022) (applying *Clements* to § 2255 proceedings). He supplied no such information.

recognized by the Supreme Court," so § 2255(f)(3) does not apply. And he does not rely on any facts that were discovered within the year prior to his filing his motion, so § 2255(f)(4) does not apply.

Accordingly, McIntyre's motion was untimely filed, and his motion must be dismissed unless he can establish an exception to the statute of limitations. One exception is equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (holding that the statute of limitations for § 2254 motions are subject to equitable tolling); *Lombardo v. United States*, 860 F.3d 547, 551–52 (7th Cir. 2017) (applying the equitable tolling doctrine to a motion under § 2255). But as the Government points out, McIntyre does not mention equitable tolling, *see* Mot. Dismiss 9, so he cannot meet his burden to establish his entitlement to it, *see Mayberry v. Dittmann*, 904 F.3d 525, 529–30 (7th Cir. 2018).

The Government identifies another exception to the statute of limitations: actual innocence. *See* Mot. Dismiss 7. "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A mere showing of legal insufficiency is not enough. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). The Government argues that the innocence must be demonstrated through new evidence and that McIntyre does not make such a claim. *See* Mot. Dismiss 7. It addresses the actual innocence exception no further.

McIntyre does make a claim of actual innocence. He argues that the evidence was insufficient to convict him of heroin distribution resulting in death. *See* 2255 Mot. 4. But he did

not plead guilty to heroin distribution resulting in death; instead, he pleaded guilty to the lesser included offense of heroin distribution.[4]  He was, however, held to a base offense level of 38 based on death resulting from his distribution of heroin.  *See* Presentence Investigation Report ¶ 28, ECF No. 60 (citing U.S Sent'g Guidelines Manual § 2D1.1(a)(2) (U.S. Sent'g Comm'n 2018)).  Thus, he must be arguing that he is actually innocent of a Sentencing Guidelines enhancement.

Even if this suffices for the actual innocence gateway,[5] McIntyre has not met the exacting standard for proving actual innocence.  In *Burrage*, the Supreme Court held that finding a defendant guilty of the "death results" penalty "requires proof 'that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct.'"  *Burrage*, 571 U.S. at 211 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013)).  McIntyre argues that the "[e]vidence is insufficient to meet *Burrage*'s heightened standard of causation." 2255 Mot. 4.[6]  He is relying on excerpts[7] from a toxicology report—of which he indicates his counsel was aware—that he argues show that the victim already had a fatal level of drugs in his system.  *See id.* at 4–5 (arguing that the report supports his actual innocence claim and that his

---

[4] If he had pleaded guilty to heroin distribution resulting in death, he would have been subject to a mandatory minimum twenty years of imprisonment rather than the statutory maximum of twenty years of imprisonment he faced.  *See* 21 U.S.C. § 841(b)(1)(C).

[5] It is not clear that the actual innocence gateway exception extends to claims that a defendant is innocent of his sentence.  *See United States v. Jones*, 758 F.3d 579, 586 (4th Cir. 2014) (concluding that "*McQuiggin* does not extend to cases in which a movant asserts actual innocence of his sentence, rather than of his crime of conviction" and citing cases in support); Brian R. Means, Federal Habeas Manual § 9B:78 (May 2022 Update) ("The Supreme Court has thus far declined to extend the actual innocence exception to noncapital sentences.").  It seems even more unlikely that being innocent of an advisory Sentencing Guidelines enhancement would suffice.

[6] As *Burrage* was decided before McIntyre was indicted, convicted, and sentenced, he cannot be asserting that he is actually innocent by operation of a change in substantive law.  *Cf. Lund v. United States*, 913 F.3d 665, 667–68 (7th Cir. 2019) (discussing whether the actual innocence exception extends to a situation "where a subsequent change to the scope of a law renders the conduct the petitioner was convicted for no longer criminal").

[7] McIntyre only provided pages one and three of the report.

6

counsel was ineffective for failing to point this out to the Government); Toxicology Report, ECF No. 73-1.[8]

McIntyre pleaded guilty after *Burrage* established the causation requirement for death resulting from the distribution of drugs, and he stipulated in the plea agreement that the heroin he distributed was the but for cause of the victim's death and that the heroin was independently sufficient to kill the victim, *see* Plea Agreement ¶ 26(a). The toxicology report does not undermine this stipulation such that McIntyre can show "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. McIntyre argues that the report shows that the victim already had a fatal concentration of mitragynine in his system before he took the heroin McIntyre distributed. 2255 Mot. 4. But it does not show that. It shows that the victim had a mitragynine concentration of 46 ng/mL in his system, Toxicology Report 1, and, in a reference section, states that "[m]itragynine blood concentrations listed in fatalities ranged from 20-600 ng/mL" and that "other substances may have also been present" in those fatalities, *id.* at 3. This general statement does not demonstrate that this particular victim had a fatal level of mitragynine in his blood. The report also shows that the victim had other drugs in his system. *Id.* at 1. But the mere fact that the victim had other drugs in his system does not mean that heroin could not be the but for cause of his death. A drug is the but for cause of a death if it "was the straw that broke the camel's back." *Burrage*, 571 U.S. at 211. As long as the heroin "pushed [the victim] over the edge," a reasonable juror could still find that it was the but for cause of the victim's death. *See Perrone v.*

---

[8] Without any analysis of the issue, the Government must be suggesting that this is not new evidence. *See* Mot. Dismiss 7. The issue seems complicated considering that McIntyre pleaded guilty and is arguing that his counsel was ineffective for failing to rely on this evidence to challenge the enhancement. *Cf. Gomez v. Jaimet*, 350 F.3d 673, 679–80 (7th Cir. 2003) (holding that where a prisoner is alleging ineffective assistance of counsel based on failure to present evidence at trial, the evidence relied on to prove actual innocence need not have been unavailable to the defense at the time of trial but instead merely newly presented to the court). The Court will assume without deciding this is the type of evidence that could be relied upon to show actual innocence.

*United States*, 889 F.3d 898, 906 (7th Cir. 2018) ("[T]he fact that other substances in [the victim's] bloodstream played a part in her death does not defeat the government's claim that her death resulted from the cocaine [the defendant] gave her. A jury could have found [the defendant] guilty . . . if it concluded beyond a reasonable doubt that [the] cocaine pushed her over the edge.").

Moreover, if the heroin was an independently sufficient cause of death, it would not matter if the victim had a fatal dose of another drug in his system. *See Burrage*, 571 U.S. at 218–19 (leaving open the possibility that a defendant can be liable for a victim's death if the drug distributed is an independently sufficient cause of death). Nothing in the excerpts of the toxicology report that McIntyre provided to the Court shows that the heroin was not an independently sufficient cause of death, as he stipulated.

Accordingly, McIntyre cannot establish with the toxicology report[9] "that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt," *Schlup*, 513 U.S. at 327. Therefore, he has not established actual innocence in order to overcome the untimeliness of his 2255 Motion. Accordingly, the Government's Motion to Dismiss is GRANTED, and McIntyre's motion is DISMISSED as untimely.

### III. Certificate of Appealability

When a district court enters a final order adverse to an applicant, it must issue or deny a certificate of appealability. Rule 11(a), Rules Governing § 2255 Proceedings. A court can grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where, as here, the "court denies a habeas

---

[9] McIntyre also included as an exhibit to his 2255 Motion a report from the deputy coroner about his activities upon being notified of the death of the victim. Report, ECF No. 73-2. But McIntyre does not appear to cite to this in his 2255 Motion, and nothing in the report supports his actual innocence claim.

petition on procedural grounds without reaching the prisoner's underlying constitutional claim," the court may grant a certificate of appealability only if the petitioner makes a substantial showing of the denial of a constitutional right and "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Jurists of reason would not debate the correctness of the Court's ruling that McIntyre's motion is untimely. The Court therefore declines to issue a certificate of appealability.

## CONCLUSION

Accordingly, Plaintiff-Respondent United States of America's Motion to Dismiss Petitioner's Motion to Vacate, Set Aside, or Correct the Sentence, ECF No. 74, is GRANTED, and Defendant-Petitioner Ajayi Marcel McIntyre's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 73, is DISMISSED as untimely. The Clerk is directed to enter judgment and close the accompanying civil case, No. 4:22-cv-04155-SLD.

Entered this 5th day of October, 2023.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE